**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 29 2005 ★

P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RUSSELL P. MEDOY, *Administrator of the
Estate of Audrey Medoy,*

Plaintiff,

-against-

97 CV 6612 (SJ)

WARNACO EMPLOYEES' LONG TERM
DISABILITY INSURANCE PLAN and
WARNACO, INC., *as Administrator
of the Warnaco Employees' Long Term
Disability Plan,*

**MEMORANDUM
AND ORDER**

Defendants.
--------------------------------------------------------X

A P P E A R A N C E S :

EDGAR PAUK, ESQ.
144 East 44th Street
Suite 600
New York, NY 10017
Attorney for Plaintiff

SEYFARTH, SHAW, FAIRWEATHER &
GERALDSON
1270 Avenue of the Americas
Suite 2500
New York, NY 10020-1801
By:     Peter Walker, Esq.
Attorney for Defendants

JOHNSON, Senior District Judge:

Russell P. Medoy ("Plaintiff"), Administrator of the Estate of Audrey Medoy

("Medoy"), brought this action against the Warnaco Employees' Long Term Disability

Insurance Plan (the "Plan") and Warnaco, Inc. ("Warnaco"), as administrator of the

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★
DEC 29 2005       ★

P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
RUSSELL P. MEDOY, *Administrator of the*
*Estate of Audrey Medoy,*

                        Plaintiff,

        -against-

                                                    97 CV 6612 (SJ)

WARNACO EMPLOYEES' LONG TERM
DISABILITY INSURANCE PLAN and              **MEMORANDUM**
WARNACO, INC.,  *as Administrator*              **AND ORDER**
*of the Warnaco Employees' Long Term*
*Disability Plan,*

                        Defendants.
------------------------------------------------------X

A P P E A R A N C E S :

EDGAR PAUK, ESQ.
144 East 44th Street
Suite 600
New York, NY 10017
Attorney for Plaintiff

SEYFARTH, SHAW, FAIRWEATHER &
GERALDSON
1270 Avenue of the Americas
Suite 2500
New York, NY 10020-1801
By:     Peter Walker, Esq.
Attorney for Defendants

JOHNSON, Senior District Judge:

        Russell P. Medoy ("Plaintiff"), Administrator of the Estate of Audrey Medoy

("Medoy"), brought this action against the Warnaco Employees' Long Term Disability

Insurance Plan (the "Plan") and Warnaco, Inc. ("Warnaco"), as administrator of the

P-049

Plan (collectively, "Defendants"), alleging (1) that termination of Medoy's long-term disability benefits constituted a breach of the terms of the Plan that is enforceable under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"); (2) that Warnaco, as administrator of the Plan, violated ERISA's document disclosure requirements, as provided in section 104(b)(4); and (3) that Warnaco, as administrator of the Plan, violated ERISA's document retention requirements, as provided in section 107 of ERISA.[1] See 29 U.S.C. §§ 1132(a)(1)(B), 1024(b)(4), 1027. Plaintiff requests an injunction requiring Defendants to pay retroactive and prospective long-term disability benefits; punitive damages as allowed by ERISA; attorney's fees; and costs.

Defendants now move for summary judgment with respect to each of the three causes of action. For the reasons stated herein, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

Medoy was employed by the White Stag Corporation, later acquired by Warnaco, Inc., between August 13, 1979 and February 13, 1983, when she stopped working due to the onset of Crohn's disease. (Verified Compl. ¶¶ 6, 9.) With the

---

[1] This action was initially brought on November 12, 1997 by Medoy, who passed away on December 19, 2000; therefore, Russell Medoy now brings this action as the administrator of Medoy's estate.

assistance of her attorney, Medoy filed an application for long-term disability benefits with the Plan, which was fully insured by CIGNA Group Insurance ("CIGNA"). (Id. ¶ 12.) On June 25, 1984, Medoy's benefits application was granted on a retroactive basis to August 13, 1983.[2] (Id.)

Medoy also applied for Social Security disability benefits on the advice of Warnaco and was informed that, upon receipt of a Social Security award, her benefits would be adjusted accordingly. (Id. ¶ 13.) The Social Security Administration denied Medoy's initial application for benefits on November 16, 1984, and her subsequent appeal on August 21, 1985. (Id. ¶¶ 13, 16.) Medoy forwarded copies of these decisions to CIGNA. (Id. ¶¶ 14, 16.) Medoy submitted yet another application for Social Security benefits on May 16, 1986, for which the Social Security Administration did not render a decision. (Id. ¶¶ 17, 20.) Thereafter, Medoy submitted an application for Social Security benefits on April 4, 1988, which was denied both upon initial review and upon reconsideration. (Id. ¶ 20.) After requesting

---

[2]Defendants allege in their Local Rule 56.1 Statement of Material Facts As to Which They Contend There is No Issue to Be Tried, ¶ 2, that Medoy began receiving long-term disability benefits in February 1983. For this allegation, Defendants cite to statements made in Plaintiff's Verified Complaint and in the Defendants' Answer. (Verified Compl. ¶ 9, Answer ¶ 10.) Plaintiff counters this allegation and states that Medoy began receiving benefits retroactively to August 13, 1983. (Pl.'s Counterstmt. Material Facts ¶ 2.) Contrary to the Defendants' cited authority, neither the Verified Complaint nor Answer support their proposition. The Court therefore believes Defendants' assertion to be in error. However, the Court need not (and would not) resolve this disputed fact here because the start date of Medoy's disability benefits is not critical to the motion at bar.

P-049

a hearing regarding the April 1998 denial, Medoy was awarded Social Security disability benefits on October 3, 1989, which was initially made retroactive to April 1987. (Id. ¶ 21.) In a decision dated December 30, 1990, the Social Security Administration subsequently made Medoy's disability benefits retroactive to May 31, 1985, based on her May 16, 1986 application. (Id. ¶ 23.) Medoy submitted both the October 3, 1989 and December 30, 1990 decisions to CIGNA. (Id. ¶¶ 27, 29.)

On or about August 18, 1987, a claims analyst from CIGNA sent Medoy a letter that stated:

> This is in reference to your long term disability claim with the company. Please be advised that we will process benefits through August 31, 1987, as Dr. Mayer is releasing you to return to work September 1, 1987. Shortly you should receive [a] final draft for the month of August. We hope our service has been satisfactory to you. If you have any further questions, feel free to contact me at (212) 440-4041.

(Defs.' Mem. Law Supp. Mot. Summ. J. at 3; Pl.'s Resp. Defs.' Req. Admis. ¶ 4-7.) On or about August 31, 1987, the Plan discontinued benefit payments to Medoy. (Verified Compl. ¶ 18.)

On July 22, 1993, Medoy delivered to Warnaco a written request for resumption of her long-term disability benefits and for the production of "copies of all documents and correspondence [that] contain[ed] the reason(s) and basis for the termination of [her] disability benefits." (Verified Compl. ¶ 26.) Warnaco referred Medoy's request to CIGNA on August 10, 1993. (Answer ¶ 44.) On November 3,

4

1993, Medoy renewed her request for documents related to her long-term disability benefits and also requested "a current copy of the long term disability plan, including the claim and appeal procedure []." (Answer ¶ 45; Verified Compl. ¶ 43.) Warnaco responded on November 5, 1993 to Medoy's document requests by informing her that her "file would be kept by CIGNA since the [] Plan was an 'insured contract.'" (Verified Compl. ¶ 43.)

After receiving Warnaco's letter, Medoy contacted Warnaco again on December 10, 1993 by reply letter and requested a copy of the current Plan and all summary plan descriptions ("SPDs") and related amendments since 1983. (Verified Compl. ¶ 45.) It is not clear whether Warnaco forwarded this request to CIGNA. Plaintiff alleges that CIGNA finally informed her on December 17, 1993 that her file "had been destroyed" and therefore CIGNA could not respond to Warnaco's inquiry regarding the reasons for the termination of Medoy's benefits. (Verified Compl. ¶ 30, 43.) A letter from CIGNA to Warnaco dated July 16, 1994 further confirmed that CIGNA's file for Medoy had been destroyed. (Verified Compl. ¶ 34.) On July 31, 1995, CIGNA informed Medoy via letter that "Medoy's disability benefits appear[ed] to have been terminated for not meeting the continued requirements" of the Plan. (Verified Compl. ¶ 36.)

By letter dated April 22, 1994, Plaintiff appealed the denial of her benefits to Warnaco. (Verified Compl. ¶ 31.) After further correspondence with Warnaco, and

5

having received no decision on her appeal, Plaintiff issued a letter dated August 20, 1996, demanding the resumption of benefits. (Verified Compl. ¶ 37.) After receiving no response from Warnaco, Medoy filed this action on November 12, 1997.

## PROCEDURAL BACKGROUND

Defendants and Warnaco, Inc., in its personal capacity,[3] previously filed with this Court a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); <u>Medoy v. Warnaco Employees' Long Term Disability Ins. Plan</u>, 43 F. Supp. 2d 303 (E.D.N.Y. 1999) ("Medoy I"). For various reasons, including that Medoy's benefits claim was not time-barred, the Court denied Defendants' Rule 12(b)(6) motion.

Defendants now move for summary judgment. The Court has jurisdiction over this action under § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[3]At the time this Court considered the Rule 12(b)(6) motion, the currently named Defendants and Warnaco, Inc., in its personal capacity, were all defendants in this action. By an Order dated April 25, 2005, all claims against Warnaco, Inc., in its personal capacity, were settled and that defendant was dismissed from the case.

P-049

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact, and the district court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). In deciding a summary judgment motion, this Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." Id.

When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts," Borthwick v. First Georgetown Sec., Inc., 892 F.2d 178, 181 (2d Cir. 1989), or defeat the motion through "mere speculation or conjecture," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citations omitted). Furthermore, the existence of disputed facts that are immaterial to the issues at hand is no impediment to summary judgment. See id. at 11-12.

## DISCUSSION

### I. PLAINTIFF'S BENEFITS CLAIM

Defendants now move to dismiss Plaintiff's claim that CIGNA's termination of

7

Medoy's benefits breached the terms of the Plan, and thus violated section 502(a)(1)(B) of ERISA, on the ground that this claim is time-barred. Defendants argue, and Plaintiff concedes, that the six-year statue of limitations provided by Rule 213(2) of the New York Civil Practice Law and Rules ("CPLR") should apply with respect to this claim because ERISA does not provide a statute of limitations for section 502 claims. Although this Court agrees with the parties' ultimate conclusion, the underlying analysis must be more fully developed in order to address properly a more contentious and relevant issue – namely, the moment at which Medoy's benefits claim accrued and therefore the limitations period began to run.

### A. Applicable Statute of Limitations for Benefits Claims Arising from an ERISA-Regulated Employee Welfare Plan

As this Court noted in <u>Medoy I</u>, ERISA does not prescribe a limitations period for actions brought under section 502 of ERISA, so the applicable statute of limitations period is that specified in the most closely analogous state limitations statute.[4] <u>See</u> 29 U.S.C. § 1132(a)(1)(B); <u>Miles v. New York State Teamsters Conference Pension Plan</u>,

---

[4] Courts in the Second Circuit have also considered whether or not the statute of limitations set forth in 29 U.S.C. § 1113, which generally applies to breaches of fiduciary duty, also applies to actions brought under section 502. <u>See, e.g.</u>, <u>Patterson-Priori v. Unum Life Ins. Co. of Am.</u>, 846 F. Supp. 1102, 1104 (E.D.N.Y. 1994). Because section 502 claims are generally brought to recover benefits based on a violation of ERISA, the statute of limitations for breaches of fiduciary duty has been held to be inapplicable. <u>Id.</u> at 1104; <u>see also</u> <u>Nolan v. Aetna Life Ins. Co.</u>, 588 F. Supp. 1375, 1378 (E.D. Mich. 1984) ("[S]ection 1113 is not applicable to actions commenced pursuant to Section 1132 because Section 1132 is not within the 'part' referenced in Section 1113.").

698 F.2d 593, 598 (2d Cir. 1983). Accordingly, the United States Court of Appeals for the Second Circuit ("Second Circuit") has held that the six-year statute of limitations under Rule 213 of the New York CPLR applies to section 502 actions. N.Y. C.P.L.R. 213(2) (2005); Miles, 698 F.2d at 598.

Notwithstanding the general applicability of the six-year limitations period in actions arising out of section 502, section 201 of New York's CPLR allows contracting parties to shorten a limitations period if that period is contained in a written agreement between the parties. N.Y. C.P.L.R. 201 (2005); Patterson-Priori, 846 F. Supp. at 1105. Specifically, a shorter limitations period is acceptable if it is not unreasonably short and adequate notice of the shorter period is contained in the plan's regulations and rules booklet. See Scheirer v. NMU Pension & Welfare Plan, 585 F. Supp. 76, 78 (S.D.N.Y. 1984).

In this case, the Plan's Certificate of Insurance ("Certificate"), which describes the Plan's coverage in detail and is issued by CIGNA to each employee, provides that the statue of limitations for bringing legal actions arising from the insurance contract is three years after the 90-day period within which written proof of loss must be produced, in effect three years and three months after the loss itself.[5/6/] See Pauk

---

[5]The Certificate's statute of limitations apparently complies with section 3216 of New York State Insurance Law, which the Certificate incorporates by reference to amend the provisions contained therein when such provisions conflict with state law. Affirm of Edgar Pauk in Opp'n to Defs.' Mot. Summ. J. ("Pauk Affirm"), Ex. 6 at 6; see N.Y. Ins. Law § 3216 (2005). Section 3216 requires that all accident and

Affirm, Ex. 5 at 4, Ex. 6 at 6. Plaintiff contends that the statute of limitations provided in the Certificate is inapplicable to the section 502 benefits claim because it is not included in the Plan's SPD. (Pl.'s Mem. Law Opp'n Mot. Summ. J. at 2.) We agree with this contention.

ERISA requires employers to furnish employees with summary forms of benefit plans, also known as SPDs, that describe, inter alia, circumstances which may result in disqualification, ineligibility, or a denial of benefits. See 29 U.S.C. § 1022. Thus, ERISA contemplates that the SPD "will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 110 (2d Cir. 2003) (citation omitted). To allow a benefit plan to contain terms that supersede the terms of the SPD would defeat the purpose of providing the employees with summaries. Id. Ultimately, when the terms of a plan and the SPD conflict, the SPD controls. Id.

---

insurance claims issued or delivered to New York residents contain specified disclosures, including the disclosures regarding the limitations period for bringing civil actions. Specifically, section 3216(d)(1)(K) provides, in pertinent part, that "[n]o such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished." N.Y. Ins. Law § 3216(d)(1)(K).

[6]Although Congress preempted any and all state laws that relate to employee benefit plans through section 514 of ERISA, Congress also created an exception to this broad preemption clause for state laws that regulate insurance, banking, or securities. See 29 U.S.C. § 1144(b)(2)(A); Scheirer v. NMU Pension & Welfare Plan, No. 82-5554, 1983 U.S. Dist. LEXIS 13743, at *7 (S.D.N.Y. Sept. 15, 1983).

In this case, Defendants produced an SPD that, in large part, complied with ERISA's substantive disclosure requirements. However, Defendants' SPD failed to disclose fully the "remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C. § 1022. Although Defendants' SPD provides relatively detailed information regarding the internal appeals process and general information regarding a participant's rights under ERISA, the SPD is silent regarding the statute of limitations for legal actions.

As a general rule, a deficiency in the SPD does not automatically allow the employee to disregard a benefit plan's restrictions. In order to take advantage of a deficient SPD, an employee suing under ERISA must show prejudice resulting from the deficiency. See Manginaro v. Welfare Fund of Local 771, 21 F. Supp. 2d 284, 296 (S.D.N.Y. 1998) (concluding that a plan participant must show likely prejudice by a faulty SPD in order to prevent the enforcement of undisclosed plan terms and rejecting the conclusion of other circuit courts that detrimental reliance on the SPD was required). In the Second Circuit, likely prejudice to a plaintiff will be presumed if, as the result of the SPD's deficiency, a participant is not aware of the need to take an action within his control (e.g., submitting an affidavit, filing a law suit) that would have avoided the restriction on eligibility for benefits, and the participant consequently failed to take that action. See Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228, 262 (S.D.N.Y. 2005).

11

In determining whether Medoy was "likely prejudiced" by the absence of language regarding the statute of limitations for legal actions in Defendants' SPD, the case of <u>Manginaro</u> is instructive because it is strikingly similar to the case at bar. In <u>Manginaro</u>, the court considered the timeliness of a benefits claim made under an employee welfare benefit plan that provided medical benefits to its participants and beneficiaries. <u>Manginaro</u>, 21 F. Supp. 2d at 289. These medical benefits were conferred pursuant to the terms of group insurance policies between the plan and various insurance companies. <u>Id.</u> One such group insurance policy imposed a two-year statute of limitations on legal actions. <u>Id.</u> at 290. The SPD, however, omitted any mention of that statute of limitations. <u>Id.</u> at 291. The normal statute of limitations under New York law would have been six years. <u>Id.</u> at 293. The plaintiff did not file suit within the two-year limitation period provided by the plan, and the defendants moved for summary judgment with respect to the section 502 claim on that ground. <u>Id.</u> at 293. The <u>Manginaro</u> court first ruled that the lack of statute of limitations language in the SPD trumped the statute of limitations provided in the benefit plan and, accordingly, held that New York's six-year statute of limitations applied to the plaintiff's benefits claim. On the question of prejudice, the court further reasoned that "had the [plan] adequately disclosed the two-year limitation via the SPD, it is likely that [plaintiff] would have learned of this limitation from his employer, his co-workers, or the union, even if he never read the SPD himself." <u>Id.</u> at 296.

12

Following the reasoning of <u>Manginaro</u>, this Court finds that the omission of statute of limitations language from the SPD likely resulted in prejudice to Medoy. Indeed, had the SPD included the applicable limitations period for her benefits claim, Medoy would have been put on notice, by her own review or by another source, of the timeframe in which she should have brought a legal action. Therefore, Warncaco's SPD is controlling and the three-year statue of limitations provided in the Certificate is inapplicable. Furthermore, given the absence of statute of limitations language in the SPD, the six-year statute of limitations provided by New York law applies to Plaintiff's section 502(a)(1)(B) benefits claims.

## C.    Accrual of the Benefits Claim

The Court now turns to the question of when Plaintiff's benefits claim under section 502(a)(1)(B) began to accrue and, accordingly, when the applicable six-year statute of limitations began to run.

Courts in the Second Circuit have generally followed the <u>Miles</u> principle that "[a] plaintiff's ERISA cause of action accrues and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." 698 F.2d at 598. Furthermore, the "repudiation or denial of benefits must be 'clear,' 'unequivocal,' and 'continuing.'" <u>Medoy v. Warnaco Employees' Long Term Disability Ins. Plan</u>, 43 F. Supp. 2d 303, 306-07 (E.D.N.Y. 1999) (quoting <u>Mitchell v. Shearson Lehman Bros.</u>, No. 97 CV 0526, 1997

13

U.S. Dist. LEXIS 7323, at *2 (S.D.N.Y. May 27, 1997). Notwithstanding Medoy's

argument to the contrary, this rule of accrual applies even when a benefit plan

prescribes a different accrual date, such as when "the proof of loss [is] required to be

furnished," Pauk Affirm, Ex. 6 at 6, because holding otherwise would allow an

"insurer to simply bury a denial of coverage and wait for the statute of limitations to

run," Mitchell, 1997 U.S. Dist. LEXIS 7323, at *8.

The Second Circuit recently recognized the disagreement among district courts

over the precise time of accrual of an ERISA-based cause of action for improper denial

of benefits in Veltri v. Bldg. Serv. 32B0J Pension Fund, 393 F.3d 318, 325 (2d. Cir.

2004). In Veltri, the plaintiff was a member of an ERISA-governed multi-employer

pension plan and applied for retirement benefits for service rendered to his employer

from 1957 to 1969 and from 1980 to 1992. Id. at 321. The plan approved the

plaintiff's application for the latter period, but denied his benefits for the former period

because of a "break in service." Id. The defendants informed the plaintiff of the

reason for the benefits denial via a letter in 1992, which also enclosed a booklet

regarding the plan's policies. Id. Although the booklet included provisions regarding

administrative appeals, the letter did not reference that section of the booklet and did

not mention the plaintiff's right to appeal the benefits denial. Id. at 322.

Notwithstanding plaintiff's allegation that he placed calls to the defendant and that the

calls went unanswered, he did not appeal the denial and received benefits for eleven

14

years after receiving the defendant's letter. Id. Veltri reinitiated his inquiries in 2001 and was again informed that his break in service meant that he was not entitled to benefits before the year 1980. Id. After obtaining an attorney and reviewing his record of service, Veltri filed a claim for additional benefits in November 2001. Id. After receiving no response on the claim, Veltri appealed to the trustees of the plan. Id. Veltri again received no response and then filed a lawsuit in June 2002. Id.

As noted in Veltri, some district courts have held that a cause of action accrues when administrative remedies are exhausted. Veltri, 393 F.3d at 324 (citing Mitchell, 1997 U.S. Dist. LEXIS 7323, at *3). Other courts have held that a cause of action accrues upon the initial denial of benefits. Id. (citing Patterson-Priori, 846 F. Supp. at 1108). Rather than resolving this disagreement, the Second Circuit held that equitable tolling was appropriate in Veltri because the defendants failed to comply with the regulatory requirement that benefit plans provide notice to beneficiaries of the right to bring an action in court that challenges a denial of benefits. Id. at 325. The Second Circuit also concluded, as a result of its holding, that it need not resolve the question of when the underlying benefits claim accrued. Id.

To temper this result, the Veltri court made clear that its holding was not to be construed as a "a simple mechanical rule that failure to notify a claimant of her right to bring an action in court automatically tolls the statute of limitations." Id. at 326. The court noted, for example, that "a plaintiff who has actual knowledge of the right to

15

bring a judicial action challenging the denial of [] benefits may not rely on equitable tolling notwithstanding inadequate notice from [a] pension plan." Id. Although the federal notice regulations applicable to Medoy's case vary from those discussed in Veltri, this Court believes that the equitable tolling analysis of Veltri is instructive for the case at bar.[7]

Defendants assert that Medoy's cause of action accrued upon her receipt of the

---

[7] ERISA-governed employee benefit plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, 29 U.S.C. § 1133(1), and afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review, 29 U.S.C. § 1133(2)." Veltri, 393 F.3d at 323 (internal quotation marks omitted). As noted by the Veltri court, this specific mandate was part of Congress' general response to the "lack of employee information and adequate safeguards concerning" the operation of such plans, which threatened the "continued well-being and security of millions of employees and their dependents." Id.

Under the federal regulations in effect at the time that CIGNA issued the 1987 letter, notice of an adverse benefits determination to a claimant had to set forth, in a manner calculated to be understood by the claimant,

(1) the specific reason or reasons for the denial;
(2) specific reference to pertinent plan provisions on which the denial is based;
(3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
(4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. 2560.503-1(f)(1)-(4) (1984). Unlike the version of the federal regulations discussed in Veltri, the regulations applicable to this case contain no requirement that an adverse benefits determination provide notice of a "claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review." See 29 C.F.R. 2560.503-1(g)(1)(iv) (2001).

16

1987 Letter from CIGNA because the letter provided "clear" and "unequivocal" notification, as required by <u>Miles</u>, to Medoy that her benefits would cease after August 31, 1987. (Defs.' Mem. Law Supp. Mot. Summ. J. at 7-8.) Defendants further argue that Medoy's conduct after receiving the letter, i.e. her attempt to have CIGNA's benefits denial reversed via her physician, supports this conclusion. (Defs.' Mem. Law Supp. Mot. Summ. J. at 8.)

Based on the Certificate's provisions, Plaintiff argues that a cause of action under section 502 of ERISA for long-term disability benefits accrues when a claimant is required to provide written proof of loss, in this case, within 90 days of the termination of Medoy's disability. (Pl.'s Mem. Law Opp'n Defs' Mot. Summ. J. at 2.) Plaintiff argues that this Court should adopt the accrual point provided in the Certificate, because it is "mandated by statute to be included in all disability insurance policies issued in New York state," <u>Panepinto v. NY Life Ins. Co.</u>, 688 N.E.2d 241, 242 (N.Y. 1997), and is saved from ERISA preemption because it is a state law "which regulates insurance," <u>Unum Life Ins. Co. of America v. Ward</u>, 526 U.S. 358, 363 (1999). <u>See also</u> 29 U.S.C. § 1144(b)(2)(A) (ERISA savings clause); N.Y. Ins. Law 3216 (d)(1)(K). Plaintiff avers that Medoy remained disabled at least up to the date she filed this case, Verified Compl. ¶ 40; therefore, her disability never terminated, her section 502 cause of action never accrued, and the statute of limitations on that cause of action never began to run. <u>Id.</u> In the alternative, the Plaintiff contends that the

cause of action accrued on April 22, 1994, the date Medoy exhausted her

administrative remedies by appealing the benefits denial and which places Plaintiff's

claim squarely within the 6-year statute of limitations. (Pl.'s Mem. Law Opp'n Defs'

Mot. Summ. J. at 12.) Plaintiff also argues that the cause of action did not accrue upon

issuance of the 1987 letter because CIGNA is not a plan fiduciary, as defined in

ERISA, and therefore does not have authority to issue termination notices, such as the

1987 Letter.[8/] (Pl.'s Mem. Law Opp'n Defs' Mot. Summ. J. at 5.)

---

[8] Although the accrual question has been resolved in this case, the Court must
nevertheless address the question of whether CIGNA is a fiduciary because CIGNA
wrote and sent the July 31, 1995 letter that this court discusses infra. Based on its
review of the record, the Court finds that CIGNA is a Plan fiduciary. Under ERISA,
an entity is a fiduciary of a benefit plan to the extent that the entity "exercises any
discretionary authority...or control respecting management of such plan" or "has any
discretionary authority...or responsibility in the administration of such plan." 29
U.S.C. § 1002(21)(A). A finding of fiduciary status is based on the function rather
than the title of the agent. Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.
1987). According to this approach, a fiduciary need not be expressly designated.
Toussaint v. JJ Weiser & Co., No. 04 CV 2592, 2005 U.S. Dist. LEXIS 2133, at *19-
20 (S.D.N.Y. Feb. 13, 2005).

Thus, construing all facts in favor of Plaintiff, this Court finds that CIGNA is a
qualified fiduciary for the Plan because it has discretionary authority in the
administration of the plan. See 29 U.S.C. 1002(21)(A)(iii). At the time that Medoy
was a participant in the Plan, CIGNA had discretionary authority to review claims in
the first instance, to determine whether an applicant was eligible for benefits, and to
review appeals. There is no indication in the record before this Court that Warnaco
reserved the right to review CIGNA's appeals decisions. Rather, there is affirmative
evidence that "CIGNA [] determine[d] whether a claimant [was] entitled to benefits,"
Mara-Louise Anzalone Aff. Supp. Defs'. Mot. Summ. J. ("Anzalone Aff."), Ex. H;
that requests for review of denied claims were "submitt[ed] to [Warnaco] for review
by [CIGNA]," Pauk Affirm, Ex. 5 at 5; and that "[CIGNA] review[ed] [denied]
claim[s] and...notified [participant's] of the final decision," id. Although CIGNA is
not named as an ERISA fiduciary, its power to make final claims-related decisions for

18

In light of <u>Veltri</u>, the Court rejects the accrual points proposed by both parties and concludes that, because Medoy never received a sufficient benefits termination notice, the six-year statute of limitations applicable to Medoy's benefits claim was tolled. <u>See</u> <u>Veltri</u>, 393 F.3d at 325. CIGNA's 1987 letter fell woefully short of the disclosures required by ERISA. Contrary to Defendants' assertions, CIGNA's 1987 letter to Medoy did not "substantially comply" with federal notice regulations pursuant to ERISA. <u>See</u> Defs.' Reply Mem. Law Supp. Mot. Summ. J. at 7; <u>see also</u> <u>Camarda v. Pan Am</u>, 956 F. Supp. 299, 311 (E.D.N.Y. 1997) (noting that precise compliance with regulations is not necessary as long as the notice substantially complies with such regulations and has provided the participant with sufficient information to appeal the denial). Specifically, the 1987 letter did not provide Medoy with the exact reasons for CIGNA's denial of benefits; did not specifically reference the pertinent plan provisions on which the denial was based; did not indicate that additional material regarding her alleged disability was necessary to perfect her claim; and did not clearly provide information as to the steps Medoy should take to submit her claim for review. If the Second Circuit found the <u>Veltri</u> defendant's mailing of a denial letter and plan booklet

---

the Plan confers fiduciary status. <u>Semmler v. Metro. Life Ins.</u>, No. 94 CV 5549, 1995 U.S. Dist. LEXIS 13618, at *13 (S.D.N.Y. Sep. 20, 1995). Under the federal regulations governing the Plan at the time that Medoy was a Plan participant, CIGNA was therefore eligible under ERISA to issue valid notices of termination. <u>See</u> 29 C.F.R. §§ 2560.503-(1)(f), (c)(1) (1984). Contrary to Plaintiff's assertion, CIGNA's involvement in the claims review and appeal procedures is made clear on the face of the SPD and therefore complies with federal regulations. <u>See</u> Pauk Affirm, Ex. 5 at 5; 29 U.S.C. § 1022(b); 29 C.F.R. § 2560.203-1(b)(1)(ii) (1984).

P-049

to the plaintiff, without specific references to the administrative appeals provisions contained therein, sufficient to justify equitable tolling, the present case is also a ripe candidate for similar equitable relief.

Even if the Court were to apply traditional analyses to determine whether Medoy's cause of action was timely, it would reach the same result. If the Court determined that the section 502 cause of action accrued upon the "initial denial of [Medoy's] benefits," Patterson-Priori, 846 F. Supp. at 1108, and that the initial denial occurred on the date of the 1987 Letter, the Court would likely hold that Defendants lack of substantial compliance with the notice regulation would require equitable tolling. See Veltri, 393 F. 3d at 325 (citing Mitchell, 1997 U.S. Dist. LEXIS 7323, at *5). If the Court determined that the section 502 cause of action accrued when "administrative remedies [were] exhausted," Mitchell, 1997 U.S. Dist. LEXIS 7323, at *3, the Court would likely hold that Medoy's cause of action accrued when she received a letter from CIGNA on July 31, 1995, which (although not a formal decision) was the only letter that provided a substantive response to Medoy's April 22, 1994 appeal. (Verified Compl. ¶¶ 31, 36-37.) Given that this case was filed in November 1997, a July 31, 1995 accrual date would place Plaintiff's section 502 claim squarely within the statute of limitations.

However, the Court's equitable tolling analysis does not end here. The Court must next determine whether Medoy had "actual knowledge" of her right to

administratively appeal an adverse benefits determination. See Veltri, 393 F.3d at 326

(citing I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51 (1st Cir. 1999)).

Although the record is unclear as to when Medoy actually possessed or reviewed the

Plan's SPD or Certificate, Defendants' evidentiary submissions confirm that

Defendants submitted an SPD to Medoy in November 1993. (Anzalone Aff., Ex. H at

2.) On its face, the SPD did provide information regarding the Plan's administrative

appeals process. Given Medoy's formal appeal in April 22, 1994, it is reasonable for

this Court to find that Medoy had actual knowledge of her right to take administrative

action on that date. The Court therefore holds that equitable tolling applied to

Medoy's benefits claim until April 22, 1994. This analysis reveals that Plaintiff's

benefits claim is timely, regardless of when Plaintiff's claim subsequently "accrued,"

because the six-year limitations period would have expired well after Medoy filed her

Verified Complaint on November 12, 1997.[9]

_____

[9]Both Plaintiff and Defendants have submitted cases to the Court that discuss
appropriate relief when a plaintiff receives a benefits termination notice that fails to
substantially comply with ERISA and related regulations. The Court finds these
submissions to be inapposite, as the cases both involve plaintiffs that submitted cross-
motions for summary judgment on the issue of whether their insurance benefits had
been properly denied. See Cook v. New York Times Co. Long Term Disability Plan,
No. 02 CV 9154, 2004 U.S. Dist. LEXIS 1259 (S.D.N.Y. Jan. 27, 2004) (where the
court denied defendant's motion for summary judgment and granted plaintiff's motion
for summary judgment after reviewing defendant's administrative record and
determining that plaintiff never had a full and fair review of the denial of benefits);
Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621 (7th Cir. 2005)
(reversing district court decision that granted defendant's motion for summary
judgment and denied plaintiff's cross-motion for summary judgment regarding
termination of plaintiff's benefits). In the absence of motions for summary judgment

**D.    Request for Relief**

For the section 502 claim, Plaintiff's prayer for relief requests that the Court "enjoin Warnaco to pay [long-term disability benefits] to Medoy retroactively to on or about September 1, 1987, with interest, and to continue such payments until she reaches the age of 65[.]" (Verified Compl. at 12.)

The general standard for issuing a preliminary injunction requires that the movant show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Harris v. Diaz, No. 04 CV 9124, 2004 U.S. Dist. LEXIS 25256, at *8 (S.D.N.Y. Dec. 13, 2004) (citations omitted).

If the Court were to find that Plaintiff is entitled to unpaid disability benefits, it would decline to issue an injunction for retroactive benefits payments because the activity the Plaintiff seeks to restrain (i.e. Defendants' non-payment of disability benefits from September 1, 1987 to the date of Medoy's death) has already occurred and the court cannot undo what has already been done. See Chapman v. S. Buffalo Ry. Co., 43 F. Supp. 2d 312, 318 (W.D.N.Y. 1999). Furthermore, Plaintiff's injunctive

---

that discuss or additional evidence regarding Warnaco's discretionary authority under the Plan (necessary to determine the Court's standard of review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)) and the extent of Medoy's disability (as required by George v. First UNUM Life Ins. Co., No. 93 CV 2916, 1996 U.S. Dist. LEXIS 18062, at *2 (S.D.N.Y. Dec. 5, 1996), the Court declines to render a decision with respect to relief at this juncture.

relief request for prospective benefits payments until Medoy reaches the age of 65 is no longer applicable in light of Medoy's death on December 19, 2000. Consequently, Plaintiff's request for injunctive relief is moot. Plaintiff is, however, granted leave to re-plead its request for relief as to the section 502 claim within 30 days of the date of entry of this Memorandum and Order.

## II.  CLAIM FOR FAILURE TO DISCLOSE DOCUMENTS

Plaintiff's second cause of action alleges that Warnaco's failure to provide plan documents upon request violated section 104(b)(4) of ERISA, which requires that plan administrators disclose certain plan documents upon "the written request of any participant or beneficiary." 29 U.S.C. § 1024(b)(4); Medoy I, 43 F.Supp. 2d at 309. The administrator is statutorily obligated to provide, inter alia, "a copy of the latest updated summary plan description...or any other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 502(a) authorizes an ERISA plan participant or beneficiary to bring a civil action to enforce this provision. See 29 U.S.C. § 1132(a)(1)(A).

Plaintiff seeks statutory penalties pursuant to section 502(c)(1) of ERISA, which states that a plan administrator who fails to make the required disclosures to a participant or beneficiary within 30 days after a request may be held personally liable for up to $100 a day from the date of failure. See 29 U.S.C. § 1132(c)(1); Medoy I, 43

F. Supp. 2d at 309. Medoy initially premised her allegations on Warnaco's failure to provide (1) "copies of all documents and correspondence, which contain the reason(s) and basis for the termination of [Medoy's] disability benefits" (Verified Compl. ¶ 43.) and (2) "a current copy of the long term disability plan, including the claim and appeal procedure" (Verified Compl. ¶ 44). In Medoy I, this Court dismissed the first half of Plaintiff's section 104(b) claim because individual benefits determination records are not within the categories of documents required to be disclosed under that section. Medoy I, 43 F. Supp. 2d at 310.[10]

Defendants contend that the remaining portion of Plaintiff's second cause of action should be dismissed in summary judgment because (a) Medoy lacks standing to bring the section 104 claim; (b) the claim is untimely; and (c) Medoy has not shown sufficient prejudice to justify statutory sanctions.

Plaintiff agrees that the section 104(b)(4) cause of action is untimely. (Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. at 13 n. 15) Therefore, Defendants' motion for summary judgment with respect to this claim is hereby granted.

_____

[10] Plaintiff requests that the Court reconsider this decision. However, the Plaintiff's request for reconsideration is untimely under both federal and local district court rules. See Fed. R. Civ. P. 56(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after the entry of the judgment."); Rule 6.3, Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("A notice of motion for reconsideration [] of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within ten (10) days after the entry of the judgment.") Therefore, the Court denies Plaintiff's request for reconsideration.

### III. CLAIM FOR FAILURE TO RETAIN RECORDS

Plaintiff's third cause of action alleges that Warnaco violated section 107 of ERISA by destroying Medoy's claims determination file. Section 107 provides that entities subject to ERISA's reporting requirements must maintain "records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data" that may be used to verify required reports. 29 U.S.C. § 1027. These records must be kept on file for at least six years. Id. Plaintiff seeks equitable relief (presumably in the form of an affirmative injunction) that "order[s] Warnaco to maintain [participant] files for at least six years, as required by...ERISA." (Verified Compl. at 12) Warnaco contends that the section 107 claim should be dismissed in summary judgment because the Plaintiff lacks standing to bring this claim and the claim is untimely.[11]

#### A. Standing

Section 502(a) of ERISA is essentially a standing provision because "it sets

---

[11] The Plaintiff's complaint does not provide statutory authority for its request for equitable relief for the third cause of action. Given the nature of the claim, this Court can only presume that the Plaintiff relies on section 502(a)(3)(A) of ERISA, which states that a participant, beneficiary, or fiduciary may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter [("Protection of Employee Benefit Rights")] or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A). Here, Plaintiff alleges that Warnaco (via CIGNA) destroyed Medoy's benefits file, an act or claim that violates section 107 of ERISA. Therefore, application of 502(a)(3)(A) to this cause of action is appropriate. Accordingly, the Court will analyze both the Defendants' standing and statute of limitations defenses to the section 107 cause of action under this enforcement provision.

P-049

forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue." Chicago Pneumatic Tool Co. v. Smith, 890 F. Supp. 100, 131 (N.D.N.Y. 1995) (quoting Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1524 (11th Cir. 1987)). As the plain language of section 502(a)(3) makes clear, a plaintiff must show that he or she is either a participant or beneficiary before bringing an ERISA enforcement action.

Medoy's "participant" status was considered by this Court in its Medoy I opinion. In Medoy I, this Court first determined that the term "participant" as contemplated by ERISA "includes former employees with a colorable claim that they will prevail for a suit for benefits since such individuals may become eligible for benefits within the meaning of the statute." Medoy I, 43 F. Supp. 2d at 309 (citation omitted). Following Supreme Court and Second Circuit precedent, this Court ultimately held that Medoy had standing to bring a Section 502(c) claim because she was "within the zone of interests ERISA was intended to protect." Id. at 310 (citation omitted).

This Court therefore remains true to its Medoy I holding that Medoy, at the time of filing, had standing to bring this claim. Construing all facts in favor of the Plaintiff, this Court finds that Medoy's claim, at the time of filing, that she was a former employee entitled to disability benefits that were wrongfully terminated is sufficiently colorable to confer participant status. Id. at 310 (citing Moriarity v. United

Techs. Corp. Represented Employees Ret. Plan, 947 F. Supp. 43, 49-50 (D. Conn. 1996)) (holding that former employee's allegations of entitlement to benefits from an employee welfare plan clearly fall within the zone of interests ERISA seeks to protect). This finding is supported by the fact that Medoy's benefits claim is timely and therefore has a possibility of "prevail[ing] in a suit." Id. Moreover, it is clear that Medoy, whose right to benefits remain at issue, falls within the zone of interests ERISA was intended to protect. Finally, Plaintiff's request for equitable relief is clearly enforcement of the type allowed by section 502(a)(3)(A). Therefore, the Court finds that Medoy has standing to bring a cause of action for Defendants' alleged violation of section 107 of ERISA.

### B. Statute of Limitations

First, it is not clear what statute of limitations applies to a section 107 claim enforced under section 502(a)(3). Although ERISA provides a statute of limitations of up to six years for breach of fiduciary duty, 29 U.S.C. § 1113, and federal law provides a default statute of limitations of four years for all federal statutes enacted after 1990, 28 U.S.C. § 1658, neither of these statutes of limitations applies to the Plaintiff's section 107 claim. Indeed, the claim at bar is not for breach of fiduciary duty,[12] but

---

[12] Section 413 provides that any action "commenced *under this subchapter* with respect to a fiduciary's breach of any responsibility, duty, or obligation *under this part*" is subject to either a six-year or three-year statute of limitations, whichever is earlier. 29 U.S.C. § 1113 (emphasis added). Section 107 is found in the ERISA part entitled "Reporting and Disclosure," and is not located in the part that relates to fiduciary responsibilities. By its terms, the statute of limitations provided in section 413 cannot

27

rather to enforce ERISA, which was enacted in 1974.  See Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust, 134 F. Supp. 2d 189 (D. Mass. 2001) (citations omitted).  Because ERISA does not provide a statute of limitations for enforcement actions under section 502 or for violations of the records retention requirement of section 107, this Court must adopt the most closely analogous New York State statute of limitations.  Miles, 698 F.2d at 598.

The Court's review of New York state law reveals that a three-year statute of limitations should apply because Plaintiff's claim to enforce ERISA's document retention requirement is "an action to recover upon a liability...created or imposed by statute."  N.Y. C.P.L.R. § 214(2) (2005).  Indeed, New York courts have held that the three-year statute of limitations period applies to all causes of action in which "liability is premised upon an obligation, duty or right created by statute and not recognized by the common or decisional law."  Hartnett v. New York City Transit Auth., 657 N.E.2d 773, 776 (N.Y. 1995).

The Court now turns to the more important issue – the accrual of the limitations period for section 107 actions.  Given the paucity of precedent for this issue, the Court must turn to the policy underlying the accrual periods chosen for other ERISA-based causes of action.  For section 502 benefits claims, the Second Circuit has

---

be used for causes of action arising under different parts of ERISA.  Therefore, neither the six-year nor the three-year statute of limitations provided in section 413 applies to Plaintiff's section 107 claim.

clearly stated that a statute of limitations runs when "the repudiation or denial of benefits [is] 'clear,' 'unequivocal,' and 'continuing.'" Miles, 698 F.2d at 598. For section 1132(c) claims for failure to disclose Plan-related documents, the statute of limitations has been deemed to run upon a defendant's "last alleged failure to respond to [a plaintiff's] information request." Leonelli v. Pennwalt Corp. et al., No. 82 CV 221, 1988 U.S. Dist. LEXIS 11455, at *5 (N.D.N.Y. Oct. 17, 1988). In the context of section 413 claims for breaches of fiduciary duty, ERISA provides that the statute of limitations begins to run after "the last action that constitutes a breach or violation" or "the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. In this Court's view, these exemplars fall into two categories for determining points of accrual – "actual knowledge" and "the last date of the defendant's violative behavior."

The Court finds the "actual knowledge" formulation to be most appealing in the context of an ERISA-document retention violation because a participant would only know that he or she has a cause of action once a benefits plan administrator either responded to or sent information regarding a benefits file. However, it is entirely plausible that the limitations period could commence on the day that a benefits plan administrator destroyed a participant's benefits file before the statutorily prescribed six-year retention period had elapsed.

In this case, the Court need not make a definitive ruling regarding the proper

29

accrual point because Plaintiff's third cause of action is untimely under either formulation. Given that CIGNA has affirmed that it "is unaware of the date upon which Medoy's file was destroyed," Third Party Def.'s Resp. Interrogs., the latest date on which Medoy's cause of action could have accrued was December 17, 1993, when she received a letter from CIGNA stating that her file had been destroyed. (Verified Compl. ¶ 46.) Given the three-year statute of limitations, Medoy needed to bring her section 107 claim prior to December 17, 1996 in order to be timely. This action was bought on November 12, 1997 and, therefore, the Court finds that it is barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment as to the Plaintiff's first cause of action is hereby DENIED. Defendants' motion for summary judgment as to Plaintiff's second and third causes of action is hereby GRANTED and, accordingly, the second and third causes of action are dismissed with prejudice. Plaintiff is granted leave to re-plead his request for relief as to the first cause of action within 30 days of the date of entry of this Memorandum and Order.

The parties shall contact the undersigned's chambers no later than January 3, 2006 in order to schedule a status conference to discuss the following: (1) the status of this case and (2) whether this case should be referred to Magistrate Judge Azrack for

discovery or settlement purposes.

SO ORDERED.

Dated:        Brooklyn, New York
              December 24, 2005

s/SJ

Senior U.S.D.J.